# EXHIBIT 1



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| NINGDE AMPEREX TECHNOLOGY LIMITED, | § § § § § § § § § § § § | **FILED UNDER SEAL** |
| *Plaintiff*, | | |
| v. | | CIVIL CASE NO. 2:22-CV-00232-JRG |
| ZHUHAI COSMX BATTERY CO., LTD., | | |
| *Defendant*. | | |

# ORDER

Before the Court is Defendant Zhuhai CosMX Battery Co., Ltd.'s ("CosMX") Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (the "Motion"). (Dkt. No. 15.) In the Motion, CosMX requests that the Court transfer the above-captioned case from this District ("EDTX") to the Northern District of California ("NDCA") pursuant to 28 U.S.C. § 1404(a). Having considered the Motion, the relevant briefing, and the applicable law, the Court finds that the Motion should be **DENIED**.

**I. BACKGROUND**

On June 24, 2022, Ningde Amperex Technology Limited ("Plaintiff") filed a complaint in EDTX against CosMX[1] asserting infringement of U.S. Patent No. 10,971,706 (the "'706 Patent") and U.S. Patent No. 11,329,352 (the "'352 Patent"). (Dkt. No. 1, ¶ 1 (the "Original Complaint").) The '706 and '352 Patents claim subject matter related to secondary batteries (i.e., rechargeable batteries such as lithium-ion batteries). (*Id.*, ¶¶ 1, 27.) On August 4, 2022, CosMX filed a

---

[1] Mainland Zhuhai Guanyu Battery Co., Ltd. ("CosMX Taiwan") was a named defendant in the Original Complaint (Dkt. No. 1), but was voluntarily dismissed by Plaintiff on July 27, 2022. (Dkt. No. 6.) CosMX is now the sole defendant in this case.

declaratory judgment action in NDCA asserting invalidity and non-infringement of U.S. Patent No. 10,833,363 (the "'363 Patent") and U.S. Patent No. 10,964,987 (the "'987 Patent") in NDCA. *Zhuhai CosMX Battery Co., Ltd. V. Ningde Amperex Tech. Ltd.*, No. 5:22-cv-04510-BLF (N.D. Cal. Aug. 4, 2022).

Plaintiff amended its complaint to claim infringement of the '363 and '987 Patents. (Dkt. No. 8, ¶ 1.) Plaintiff filed its First Amended Complaint in this case on August 4, 2022, the same day that CosMX filed the declaratory judgment action in NDCA.[2] (*See id.*) Plaintiff asserts that the '363 and '987 Patents claim subject matter related to secondary batteries. (*Id.*, ¶¶ 1, 22-30.) It accuses CosMX of infringing, directly and/or through intermediaries, by, *inter alia*, making, using, selling, offering for sale, and/or importing into the United States lithium-ion battery products and/or services that infringe the Asserted Patents (the "Accused Products"). (*Id.*, ¶ 10.) Plaintiff further alleges that CosMX regularly introduces the Accused Products into the stream of commerce through agents, customers, distributors, and intermediaries, knowing and intending that they will ultimately be offered for sale, or incorporated into other products offered for sale, to residents in the United States, or such products that will be imported into the United States. (*Id.*, ¶ 11.)

Plaintiff is a Chinese corporation with its principal place of business in Ningde City, China. (*Id.*, ¶ 2.) CosMX is a Chinese corporation with its principal place of business in Zhuhai, China. (Dkt. No. 8-1, at 2.) CosMX claims it has "plac[ed] its U.S.-based service and support personnel and infrastructure in California and does not have employees or facilities in any other state." (Dkt. No. 32, at 2.)

---

[2] CosMX argues that the declaratory judgment action was filed before Plaintiff amended its complaint. (Dkt. No. 23 at 12.)

2

## II. LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought." 28 U.S.C. § 1404(a). The question of whether a suit "might have been brought" in the transferee forum encompasses subject matter jurisdiction, personal jurisdiction, and propriety of venue. *Viking Technologies, LLC v. Assurant, Inc.*, 2021 WL 3520756, at *1 (E.D. Tex. June 21, 2021) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 343–44 (1960).) The burden is on the movant to present, in particular, "a prima facie case of both personal jurisdiction and venue in the transferee court." *Motion Games, LLC v. Nintendo Co., Ltd*, No. 6:12-CV-878-LED-JDL, 2014 WL 11621698, at *2 (E.D. Tex. Mar. 28, 2014).

If this threshold burden is satisfied, the party seeking transfer must then establish that transfer is warranted as being clearly more convenient. It is important to note at the outset that district courts have "broad discretion in deciding whether to order a transfer." *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998). The fact that litigating would be more convenient for the defendant elsewhere is not enough to justify transfer; the defendant instead must "***clearly*** establish good cause for transfer based on convenience and justice." *In re Planned Parenthood Federation of Am., Inc.*, 52 F.4th 625, 629 (5th Cir. 2022) (citing *Defense Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022)) (emphasis added).

The patent venue statute, 28 U.S.C. § 1400(b), provides two bases for venue. First, a patent case can be brought in the judicial district where the defendant "resides." 28 U.S.C. § 1400(b). A domestic corporation "resides" in its state of incorporation. *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1521 (2017). Second, a patent case can be brought in a judicial district where the defendant "has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). Proper venue under the second prong of § 1400(b)

requires a showing of three elements: (1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant. *In re Cray Inc.*, 871 F.3d 1355, 1362–63 (Fed. Cir. 2017).

In evaluating a motion to transfer pursuant to § 1404(a), the Court considers the Fifth Circuit's non-exhaustive list of private and public interest factors. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). The private interest factors include: (1) "the relative ease of access to sources of proof;" (2) "the availability of compulsory process to secure the attendance of witnesses;" (3) "the cost of attendance for willing witnesses;" and (4) "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* The public interest factors include: (1) "the administrative difficulties flowing from court congestion;" (2) "the local interest in having localized interests decided at home;" (3) "the familiarity of the forum with the law that will govern the case;" and (4) "the avoidance of unnecessary problems of conflict of laws o[r] the application of foreign law." *Id.*

While a plaintiff's choice of venue is not an express factor in this analysis, the appropriate deference afforded to the plaintiff's choice is reflected in a defendant's elevated burden of proof. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (*Volkswagen II*). In order to support its claim for a transfer under § 1404(a), the defendant bears the burden to demonstrate that the transferee venue is "***clearly*** more convenient" than the venue chosen by the plaintiff. *Id.* (emphasis added). Absent such a showing, however, the plaintiff's choice is to be respected. *Id.*

### III. DISCUSSION

#### a. This Case Could Not Have Been Brought in NDCA.

The first issue to consider is whether this case could have been brought in the transferee forum. The parties dispute whether CosMX has made the requisite showing of specific personal

4

jurisdiction in California. (*See* Dkt. No. 15 at 4; Dkt. No. 23 at 5–6; Dkt. No. 32, at 1–3; Dkt. No. 40, at 1–2). Since NDCA is the proposed transferee court in this case, 9th Circuit law controls the personal jurisdiction analysis.[3]

Courts properly exercise personal jurisdiction over a defendant when it is "permitted by a long-arm statute and if the exercise of jurisdiction does not violate federal due process." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). California's long-arm statute allows the exercise of personal jurisdiction to "the full extent permissible under the U.S. Constitution," and federal courts ordinarily follow state law in determining the bounds of their personal jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). To exercise personal jurisdiction over a nonresident defendant in conformity with due process requirements of the Constitution, the court must determine that the defendant has established "minimum contacts" with the forum state such that "the exercise of personal jurisdiction would not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

A court may exercise either general or specific jurisdiction over a nonresident defendant. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984). General jurisdiction exists where a defendant has "substantial" or "continuous and systematic" contacts with the forum. *Id.* at 415. If the defendant's contacts with the forum are insufficient for the court to exercise general personal jurisdiction, the court may still assert specific personal jurisdiction when certain requirements are met. "[A] defendant has sufficient minimum contacts with the forum state to establish personal jurisdiction if: (1) the defendant purposefully directs activities toward the forum

---

[3] CosMX has admittedly waived any personal jurisdiction objection in EDTX by appearing. *See Jackson v. FIE Corp.*, 302 F.3d 515, 523 (5th Cir. 2002); (*see* Dkt. No. 11; Dkt. No. 32, at 1 ("While CosMX has acquiesced to personal jurisdiction in Texas…").)

state, (2) the plaintiff's claim arises out of or relates to those activities, and (3) an exercise of jurisdiction would be reasonable." *Burri L. PA v. Skurla*, 35 F.4th 1207, 1212 (9th Cir. 2022).

Considering the facts presented in the briefing under the three-prong Ninth Circuit specific personal jurisdiction test, the Court finds that CosMX has not shown that it is subject to personal jurisdiction in the NDCA such that this case could have been initially filed there as required by § 1404(a).

CosMX contends that NDCA has specific personal jurisdiction over it by virtue of CosMX's contacts with NDCA.[4] (*See* Dkt. No. 32 at 1.) CosMX essentially argues that it has made sufficient contacts with NDCA in two ways. First, CosMX notes that it has "several brand customers located in NDCA including Apple, Amazon, Google, and Facebook." (*Id.* at 2; Dkt. No. 36-1, ¶ 4.) CosMX contends that when it sells battery cells to packaging companies in China, "it does so knowing that the battery cells will be packaged into batteries for CosMX's brand customers that will likely ultimately be sold in California." (Dkt. No. 32 at 2.) Second, CosMX argues that it has "particularly targeted California by placing its U.S.-based service and support personnel and infrastructure in California," pointing out that it has no employees or facilities in other states. (*Id.* at 2.) Specifically, CosMX explains that it employs an agent in NDCA "to support CosMX's US-based customers" and has listed San Francisco as its only U.S.-based address on its website. (*Id.*)

CosMX's indirect sale of lithium-ion battery products to California brand customers fails the first prong of the specific jurisdiction analysis—the evidence does not establish that CosMX

---

[4] Plaintiff argues as a threshold matter that CosMX's Motion must be denied because CosMX failed to meet or even attempt to meet its burden in its original Motion with respect to NDCA's exercise of personal jurisdiction, necessary to establish that the case could have been filed in the transferee forum. (Dkt. No. 23 at 2–3, citing *In re Accessibe Ltd.*, No. 2022-113, 2021 WL 5764861, at *1 (Fed. Cir. Dec. 6, 2021).) Plaintiff further contends that CosMX's failure in its opening brief should prevent the Court from considering the belated argument and attached evidence concerning personal jurisdiction in CosMX's reply brief. (Dkt. No. 40 at 1.) Since the Court finds that CosMX does not establish personal jurisdiction on the merits, it is unnecessary to address this argument.

purposefully directed its activities toward California. The mere placement of a product into the stream of commerce, without more, is not an act purposefully directed toward a forum state. *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 459 (9th Cir. 2007) (internal citations omitted). In fact, "[e]ven a defendant's *awareness* that the stream of commerce may or will sweep the product into the forum state does not convert the mere act of placing the product into the stream of commerce into an act purposefully directed toward the forum state." *Id.* (emphasis added). CosMX itself admits in its reply brief that "CosMX *merely places products in the stream of commerce knowing* the products will likely reach both Texas and California…" (Dkt. No. 32 at 1) (emphasis added.) Further undermining its own argument that it particularly targets California, CosMX notes that it "has relationships with brand customers *across the U.S.*" (*Id.*, citing Dkt. No. 36-1, ¶ 4) (emphasis added.)

Even if the indirect sale of lithium-ion battery products in NDCA sufficed as purposeful acts directed toward the forum state, CosMX failed to present evidence demonstrating how such contacts arose from or relate to the asserted causes of action in this case. The contacts giving rise to specific jurisdiction must arise from or relate to the claim at issue. *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cnty.*, 582 U.S. 255, 262 (2017). CosMX makes only the bare assertion—without reference to evidence—that "[Plaintiff's] claim arises out of CosMX's activities selling battery cells to U.S.-based customers, including those in California, and NDCA exercising personal jurisdiction would be reasonable." (*Id.* at 2–3.) However, as Plaintiff correctly points out, CosMX has failed to specifically identify any shipments of lithium-ion battery products to its California brand customers. (*See* Dkt. No. 40 at 1.)

The presence of an agent in NDCA similarly fails to support the exercise of personal jurisdiction by the California court where there is *no* evidence presented that the agent's presence

7

is related to or gives rise to Plaintiff's cause of action in the instant case. The declaration filed with CosMX's reply brief simply states that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Dkt. No. 36-1, ¶ 5.) The presence of an agent alone, without a showing of how his role as a marketing consultant is related to this case, is insufficient to establish personal jurisdiction. *See Capella Photonics, Inc. v. Infinera Corp.*, 2021 WL 518478, at *5 (E.D. Tex. Feb. 10, 2021) (slip copy) (where the defendants did not explain how "the presence of employees (even executives) in California…[arose] from or relate[d] to the instant claims of patent infringement," that evidence was insufficient to establish specific personal jurisdiction). As highlighted by Plaintiff, CosMX fails to explain what the consultant does, what customers he calls on, and what products he supports. (Dkt. No. 40 at 2.)

CosMX has failed to establish the personal jurisdiction of NDCA over it in this case as is required to support a motion to transfer under § 1404(a). Moreover, even if CosMX *had* satisfied the threshold inquiry of § 1404(a), its Motion to Transfer would still fail, as detailed below. In an abundance of caution, the Court nonetheless now turns to the discreet convenience factors.

### b. Private Interest Factors Do Not Support Transfer

#### 1. Relative Ease of Access to Sources of Proof

In considering the relative ease of access to sources of proof, a court looks to determine where evidence, such as documents and physical evidence, is stored. *Volkswagen II*, 545 F.3d at 316. For this factor to weigh in favor of transfer, the Defendant must show that transfer to the NDCA will result in more convenient access to such sources of proof. *See Diem LLC v. BigCommerce, Inc.*, 2017 WL 6729907, at *2 (E.D. Tex. Dec. 28, 2017). However, "[t]he location of evidence bears much more strongly on the transfer analysis when…the evidence is physical in nature." *In re Planned Parenthood Federation of Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022).

8

Where the vast majority of evidence is electronic, it is likely equally accessible in either forum. *See id.*

In support of its contention that this factor favors transfer, CosMX argues that because all technical and financial information related to the Accused Products in CosMX's possession are located in China, NDCA is appropriate because China is closer to NDCA than to EDTX. (Dkt. No. 15 at 5; Dkt. No. 16-1, ¶ 6.) Next, CosMX asserts that no witnesses or documents of either party are located in EDTX. (Dkt. No. 32 at 3.) While admitting that its large, Texas-based customers like HP and Dell likely have relevant evidence (*id.* at 4), CosMX emphasizes that those Texas-based customers are located outside of EDTX and should not be considered in the transfer analysis. (*Id.* at 3, citing *In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014).) Specifically, CosMX notes that Dell is located in the Western District of Texas, while HP is located in the Southern District of Texas. (*Id.*)

CosMX contends that, in contrast, there is a significant amount of third-party evidence located in NDCA. In particular, CosMX points to Apple, Amazon, Google, and Facebook as California customers possessing relevant evidence within NDCA. (*Id.* at 3–4.) CosMX argues that while it possesses no information on the number of Accused Products imported into the U.S., it "expects that this information resides with its customers," including Apple, Amazon, Google, and Facebook. (*See id.* at 3–4; *see also* Dkt. No. 16, ¶ 7.)

In response, Plaintiff argues that this factor strongly disfavors transfer because there is significant party evidence located abroad—it notes that CosMX ignores its own evidence in China weighing against transfer and erroneously relies exclusively on evidence from non-party, indirect customers. (Dkt. No. 40 at 4.) Plaintiff emphasizes that "[i]n any event, CosMX has presented *no evidence* to suggest customers such as Amazon even have relevant information, or whether they

9

are even located in NDCA." (Dkt. No. 40 at 4.) Lastly with regard to CosMX's indirect customers in NDCA, Plaintiff presented evidence that CosMX's sales volume to Apple is far smaller than its sales to Dell and HP, arguing that CosMX's Texas-based customers are more likely to have relevant sales information as compared to Apple, a "minor" customer. (Dkt. No. 40 at 4–5, citing Dkt. 23-1, ¶¶ 7–13.) Plaintiff further contends that CosMX "cherry-picked" Apple as likely to have relevant information to this suit because it is in NDCA. (Dkt. No. 23 at 7.)

Plaintiff maintains that, in addition to CosMX's own evidence in China weighing against transfer, the number of CosMX customers in Texas similarly weighs against transfer. (*Id.*) Plaintiff points to Dell, HP, and Texas Instruments ("TI") as such indirect customers in Texas likely to have relevant information in this suit, all of which would be severely inconvenienced if this case was transferred to NDCA, as they are each located much nearer to EDTX. (*See* Dkt. No. 25-1; *see also* Dkt. No. 23, at 8 ("For example, HP's headquarters is less than 25 miles and Dell's headquarters is less than 125 miles from [EDTX].").)

CosMX's relationship with TI and BTI Solutions, Inc. ("BTI") is hotly contested by the parties. With regard to TI, Plaintiff argues—and CosMX concedes—that CosMX sends sample products to TI for testing. (Dkt. No. 40 at 4; Dkt. No. 33 at ¶ 7.) Plaintiff notes that TI is headquartered less than 10 miles from EDTX. (Dkt. No. 23 at 7, citing Dkt. No. 40-1, ¶ 7.) However, CosMX maintains that "all technical information regarding the Accused Products resides in China," and therefore, TI's presence in Texas is irrelevant because Plaintiff has identified no sources of proof in TI's possession. (Dkt. No. 32 at 4.) Plaintiff urges that because CosMX chose to withhold the nature of its dealings with TI (as well as HP and Dell) in its opening brief— even though all three were identified in Plaintiff's complaint—this argument should be rejected.

10

(Dkt. No. 40 at 2, citing *In re Poston*, 765 F.3d 518 (5th Cir. 2014) ("Arguments raised for the first time in a reply brief [] are waived.").)

In its opposition brief, Plaintiff points to its allegations in the First Amended Complaint that BTI is a direct customer of CosMX, and notes that BTI is located in Richardson, Texas, within EDTX. (Dkt. No. 23 at 7–8, citing Dkt. No. 8 at ¶ 17.) Plaintiff argues that evidence from BTI Solutions would be highly relevant. (*Id.*) Though not mentioned in CosMX's Motion, CosMX's reply brief notes that it denied Plaintiff's allegations in the First Amended Complaint that CosMX has a relationship with BTI.[5] (Dkt. No. 32 at 1.) In fact, CosMX insists that "it has no relationship with BTI and has not shipped battery cells to BTI," arguing that BTI is a professional staffing company "that would not be a direct or indirect customer of CosMX products." (*Id.*, citing 36-1, ¶ 8.) In response, Plaintiff denounces "CosMX's efforts to misdirect the Court with respect to its connections to [BTI]." (Dkt. No. 40 at 3.) Plaintiff presented evidence that BTI—also doing business as Blue Telecom, Inc.—"advertises and resells from within EDTX a CosMX battery backup system containing relevant CosMX LIB cells." (*Id.*, citing Dkt. No. 40-1, ¶¶ 4–11.)

As the Federal Circuit has noted, "the bulk of the relevant evidence usually comes from the accused infringer." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). Here, the accused infringer, CosMX, is located in China. (*See* Dkt. No. 23, at 8.) Further, CosMX's argument that transfer is appropriate because "China is closer to NDCA" is unpersuasive. This Court has found that relevant evidence "located abroad [is] just as accessible from Texas as from California." *Opticurrent, LLC v. Bitfenix Co.*, 2022 WL 599225, at *3 (E.D. Tex. Feb. 25, 2022).

Third-party evidence appears to be scattered between California and Texas. Plaintiff contends that there are four CosMX customers likely possessing relevant evidence within Texas,

---

[5] Plaintiff argues that CosMX's unverified answer is not admissible evidence. (Dkt. No. 40 at 3.)

11

and CosMX contends that there are four CosMX customers likely possessing relevant evidence within NDCA. The Court does note that Amazon, Google, and Facebook were not identified as relevant CosMX customers located in NDCA in CosMX's *own* motion to transfer venue. Indeed, Amazon, Google, and Facebook were not mentioned until CosMX's reply brief. (Dkt. No. 32 at 2.)

Further, CosMX has not pointed to any specific evidence within the possession of any of these indirect customers beyond vague assertions that "CosMX expects" information on the number of Accused Products imported into the United States to reside with such customers. (*Id.* at 3.) Nor has CosMX refuted Plaintiff's claim that Apple is a "minor" customer; instead, it responds by noting for the first time in its reply brief that Apple is only one of CosMX's indirect customers in NDCA. The Court is reluctant to determine that this factor favors transfer when CosMX appears to exclusively rely on the presence of third-party evidence in NDCA. This is especially true where CosMX has presented no evidence to suggest that these indirect customers have relevant information beyond a declaration that CosMX ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Additionally, CosMX's contention that neither party has identified any relevant evidence in EDTX is incorrect—Plaintiff has provided sufficient evidence that BTI, an alleged direct customer of CosMX located within EDTX, advertises and resells relevant CosMX products. (*See* Dkt. No. 40-1, ¶¶ 4-11.)

The Court notes that CosMX has not alleged in its briefing that any physical evidence resides in NDCA, nor have either of the parties directed the Court to physical evidence in either jurisdiction. As mentioned above, recent Fifth Circuit guidance suggests that the location of evidence is less significant absent physical evidence. *See In re Planned Parenthood*, 52 F.4th at

12

630 (5th Cir. 2022). The Court finds that CosMX has not shown that transfer to NDCA will result in more convenient access to sources of proof. Accordingly, this factor weighs slightly against transfer.

### 2. Availability of Compulsory Process

This factor instructs the Court to consider the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order. *Volkswagen II*, 545 F.3d at 316. A district court's subpoena power is governed by Federal Rule of Civil Procedure 45. For purposes of § 1404(a), there are three important parts to Rule 45. *See VirtualAgility, Inc. v. Salesforce.com, Inc.*, 2014 WL 459719, at *4 (E.D. Tex. Jan. 31, 2014) (explaining 2013 amendments to Rule 45). First, a district court has subpoena power over witnesses that live or work within 100 miles of the courthouse. Fed. R. Civ. P. 45(c)(1)(A). Second, a district court has subpoena power over residents of the state in which the district court sits—a party or a party's officer that lives or works in the state can be compelled to attend trial, and non-party residents can be similarly compelled as long as their attendance would not result in "substantial expense." Fed. R. Civ. P. 45(c)(1)(B)(i)–(ii). Third, a district court has nationwide subpoena power to compel a nonparty witness's attendance at a deposition within 100 miles of where the witness lives or works. Fed. R. Civ. P. 45(a)(2), 45(c)(1).

CosMX maintains that this factor favors transfer because more non-party witnesses have been identified within the subpoena power of the NDCA than the EDTX. (Dkt. No. 15 at 6–7; Dkt. No. 32 at 4.) Oddly, CosMX also argues—based on pre-2013 case law—that any third-party witnesses located more than 100 miles from EDTX cannot be compelled by this Court to attend depositions within the district, and that any such subpoenas are subject to a motion to quash. (Dkt. No. 32 at 4.)

13

Plaintiff correctly responds that CosMX's reliance is misplaced; pre-2013 case law does not reflect the amendment to FRCP 45 mandating that a district court has nationwide subpoena power to compel a non-party witness's attendance at a deposition within 100 miles of where the witness lives or works. (Dkt. No. 40 at 5.) This means that where there is a deposition site both within EDTX and within 100 miles of the nonparty's location, this Court will have subpoena power. Thus, Plaintiff argues that because many of CosMX's Texas-based customers and partners are located well within 100 miles of the border of EDTX, there will be deposition sites both within the EDTX that are also within 100 miles of the non-party's location. (*Id.*)

This Court has trial subpoena power over employees of BTI, TI, HP, and Dell provided that their attendance will not result in substantial expense because they are employed within Texas. *See* Fed. R. Civ. P. 45(c)(1)(B)(ii). Further, Plaintiff is correct that BTI, TI, and HP are within 100 miles of the border of EDTX—it will be possible to find deposition sites within EDTX that are also within 100 miles of the non-party witness's work location. (*See* Dkt. No. 40 at 5.) None of these potential witnesses are within the subpoena power of the proposed transferee court in NDCA. The Court notes that CosMX has conceded that Dell and HP are likely to have evidence relevant to this suit, and does not dispute that its sales to Dell and HP are much more substantial than its sales to Apple. (Dkt. No. 32 at 4.)

On the other hand, NDCA has trial subpoena power over employees of Apple, Google, Facebook, and Amazon who work or reside in California so long as their attendance would not result in substantial expense. *See* Fed. R. Civ. P. 45(c)(1)(B)(ii). It also has subpoena power to compel deposition attendance of witnesses from those companies at a location in NDCA within 100 miles of their place of employment or residence. *See* Fed. R. Civ. P. 45(c)(1)(A). None of these witnesses are within the subpoena power of this Court.

14

The Court notes that neither party has identified any specific witnesses that might be subject to the subpoena power of the respective courts. However, the parties have each identified multiple non-party witnesses subject to one court's subpoena power but not to the other's. Accordingly, this factor, on balance, is neutral.

### 3. Cost of Attendance for Willing Witnesses

The third private interest factor focuses on the cost of attendance for willing witnesses. When considering this factor, the court should consider all potential material and relevant witnesses. *See Alacritech Inc. v. CenturyLink, Inc.*, 2017 WL 4155236, at *5 (E.D. Tex. Sept. 19, 2017). "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be travelled." *Id*. at 1343 (citing *Volkswagen II*, 545 F.3d at 317). However, as other courts applying Fifth Circuit venue law have noted, the convenience of party witnesses is given little weight. *See ADS Sec. L.P. v. Advanced Detection Sec. Servs., Inc.*, 2010 WL 1170976, at *4 (W.D. Tex. Mar. 23, 2010), report and recommendation adopted in A-09-CA-773-LY (Dkt. No. 20) (Apr. 14, 2010) ("[I]t is unclear whether Defendant is contending that the transfer would be more convenient for non-party witnesses or merely for their own employee witnesses. If the Defendant is referring to employee witnesses, then their convenience would be entitled to little weight."); *see also Frederick v. Advanced Fin. Sols., Inc.*, 558 F. Supp. 699, 704 (E.D. Tex. 2007) ("The availability and convenience of party-witnesses is generally insignificant because a transfer based on this factor would only shift the inconvenience from movant to nonmovant.").

CosMX argues that this factor weighs in favor of transfer, contending that witnesses from China will have to travel further to EDTX than to NDCA. (Dkt. No. 15 at 7.) It points out that

travel to EDTX requires a flight into Dallas/Fort Worth International Airport, then a drive of over 170 miles Marshall, while travel to NDCA is made easier by a flight to San Francisco. (Dkt. No. 15 at 7–8.) CosMX acknowledges that courts give more weight to the convenience of willing non-party witnesses than to that of party witnesses, but argues that this factor is not attenuated when the witnesses are employees of the party calling them. (*Id.* at 7, citing *Super Interconnect Techs. v. Google LLC*, No. 6:21-cv-00259-ADA, slip op. at *6 (W.D. Tex. Nov. 8, 2021).) CosMX further argues that the "100-mile rule" applies, which dictates that when the distance between the transferor and proposed transferee court exceeds 100 miles, the inconvenience of the witnesses "increases in direct relationship to the additional distance to be traveled." (*Id.* at 7, citing *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009).)

To support its argument that this factor weighs against transfer, Plaintiff points out that the dominant consideration regarding this factor is the convenience of willing third-party witnesses and notes that CosMX has identified no willing non-party witnesses. (Dkt. No. 23 at 11.) Plaintiff argues that the Federal Circuit cautioned against indiscriminate application of the 100-mile rule, and that in instances such as this—where witnesses from China would have to travel a significant distance no matter where they will testify—it should not be rigidly applied. (*Id.* at 11.)

The Court is not persuaded by CosMX's argument that travel to Marshall from China is more burdensome than travel to San Francisco. Again, this Court has recognized that the difference between EDTX and a transferee district is marginal for foreign witnesses. *Seagen Inc. v. Daiichi Sankyo Co.*, 2015 WL 13501487 (E.D. Tex. Oct. 30, 2015). Further, even should the 100-mile rule apply, CosMX has identified no willing non-party witnesses to this action. There is minimal convenience to the party witnesses as to either location, and as mentioned above, the convenience of a party's employees is entitled to little weight. Accordingly, this factor is neutral.

#### 4. All Other Practical Problems

The fourth private interest factor addresses concerns rationally based on judicial economy. *Quest NetTech Corp. v. Apple, Inc.*, 2019 WL 6344267, at *6 (E.D. Tex. Nov. 27, 2019); *see also In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010).

While CosMX concedes that this factor is neutral, Plaintiff argues that it weighs against transfer. (Dkt. No. 15 at 8; Dkt. No. 23, at 13.) The main point of contention is the existence of duplicative litigation in NDCA. As discussed above, CosMX filed a declaratory judgment action in NDCA asserting invalidity and non-infringement of the '363 and '987 Patents after the instant suit was filed. Plaintiff asserts that the risk of duplicative litigation was created by CosMX by waiting to file the NDCA action until after the instant case was filed. (Dkt. No. 23 at 13.) In response, CosMX asserts that it filed the NDCA action before Patents '363 and '987 were added to this suit, and that it is Plaintiff that created the risk of duplicative litigation. (Dkt. No. 32 at 5.) Plaintiff argues that because the NDCA action is "almost certain to be stayed under the First-to-File rule once service is effected, transferring this case is likely to result in unnecessary delays," making this factor weigh against transfer. (Dkt. No. 23 at 13.)

The Court notes that CosMX's complaint in the NDCA lawsuit and Plaintiff's First Amended Complaint in the instant suit were both filed on August 4, 2022. Further, the NDCA action has not been stayed, even though service was effected in late 2022. Accordingly, the Court finds that this factor is neutral.

c. **Public Interest Factors**

1. **Administrative Difficulties Flowing from Court Congestion**

"To the extent that court congestion is relevant, the speed with which a case can come to trial and be resolved may be a factor." *Genentech*, 566 F.3d at 1347. While the parties dispute data

17

points regarding speed to trial as between EDTX and NDCA, the parties do agree that time to trial is faster by at least 5 months in this Court.[6] (*See* Dkt. No. 32 at 5 ("In reality, the difference between the time-to-trial for the two judges is less than six months.").) Regardless of the precise median difference, both parties agree that time to trial is quicker in this Court. Therefore, the Court finds that this factor weighs against transfer, but only slightly.

### 2. Remaining Factors

The parties agree that the last three public interest factors—having a localized interest decided at home, familiarity of the forum with governing law, and avoidance of conflicts of law—are each neutral. (Dkt. No. 15, at 9; Dkt. No. 23, at 14.) Accordingly, the Court finds that the remaining factors are neutral.

## IV. CONCLUSION

In light of the foregoing, CosMX has not met its burden to establish that the Northern District of California is a proper place where this action could have originally been brought. Even if this Court's analysis as to this threshold issue fails, CosMX has not met its burden to show that a transfer would be *clearly* more convenient.[7] Accordingly and for the above reasons, CosMX's Motion to Transfer Venue to the Northern District of California (Dkt. No. 15) is **DENIED**.

**So Ordered this**
**Apr 28, 2023**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE

---

[6] Plaintiff contends that the difference in time to trial is as much as 18 months faster in EDTX.
[7] As Plaintiff points out, CosMX admits in the briefing that most of the convenience factors do not favor transfer—it conceded that all four public interest factors as well as private factor #4 are neutral. (See Dkt No. 40 at 3, citing Dkt. No. 15 at 8–9, Dkt. No. 32 at 5.)